FILED

2010 Dec-16  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **WALTER FOMBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:08-CV-20-VEH** |
| | ) | |
| **MASTERBRAND CABINETS,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Walter Fomby ("Fomby") initiated this job discrimination and retaliation case on January 3, 2008, against Defendant MasterBrand Cabinets, Inc. ("MasterBrand"). (Doc. 1).

Fomby's complaint contains three counts asserted pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Count One is a racial discrimination claim, Count Two is a retaliation claim, and Count Three is a claim of racially hostile work environment. (Doc. 1).

Pending before the court is MasterBrand's Motion for Summary Judgment (Doc. 26) filed on September 20, 2010. For the reasons explained below,

Masterbrand's Motion for Summary Judgment is due to be granted.

## II.    STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R .CIV. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[1]   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1184-85 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of

---

[1]  Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to FED. R. CIV. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## III.   STATEMENT OF FACTS[2]

## A.   Background on MasterBrand and its Relevant Employment Policies

MasterBrand produces kitchen and bathroom cabinetry at a manufacturing operation located in Talladega, Alabama.  AF 1.[3]  In March 2007, the Talladega operation's General Manager was J.W. Coady ("Coady").  AF 2.  In March 2007, MasterBrand had in effect a Policy on Equal Employment Opportunity, Workplace Harassment and Retaliation.  AF 3.  This policy provides, in part:

> Conduct and behavior or the display or use of words, objects or pictures that others could reasonably interpret as being insulting, derogatory or slurs towards persons based on their Protected Classification are prohibited.  In addition, conduct and behavior that is threatening, intimidating, vulgar, or hostile toward persons in the workplace based on their Protected Classification are forbidden.  Any conduct and behavior that would make a reasonable person uncomfortable in the

---

[2] Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick*, 2 F.3d at 1115.  Therefore, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.'") (citation omitted).

[3] Fomby has not directly responded to MasterBrand's statement of facts as required under Appendix II of the court's Uniform Initial Order.  (Doc. 17).  As a result, by operation of Appendix II, MasterBrand's facts set forth in Doc. 27 are deemed admitted for the purposes of summary judgment.  These statements shall be designated "AF," which stands for admitted fact.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of MasterBrand's Statement of Facts as set forth in Doc. 27.

work environment or could interfere with an Employee's ability to perform his or her job will not be tolerated.

The conduct and behavior forbidden by this policy specifically includes, but is not limited to (a) epithets, slurs, negative stereotyping, kidding, teasing, joking or intimidating acts that are based on a person's Protected Classification, and (b) written or graphic material circulated within the workplace that demonstrates, express or implied hostility toward a person or group because of a person's Protected Classification or characteristics.

AF 4.

In March, 2007, MasterBrand also had in effect a Workplace Violence policy to deal with any intimidation, threat of violence, or actual violence that occurred on its premises.  AF 5.  The policy provided, in relevant part:

[MasterBrand] is committed to maintaining a working environment for all Employees that is free of violence and potential threats of violence. Any actual or threatened acts of violence are unacceptable and will not be tolerated.  An Employee found to have engaged in such conduct and behavior shall be subject to disciplinary action up to and including termination of employment.   It is each Employee's duty and responsibility to report any actual or threatened violent conduct and behavior.

AF 5.

## B.   MasterBrand's Use of Temporary Workers

When Coady managed the Talladega operation, it occasionally had a need for assistance in various areas of the facility on a temporary basis.  AF 6.  When this occurred, MasterBrand contacted a temporary agency and identified the nature of its

temporary need, and the agency then assigned one of its employees to fill that temporary need. AF 7. One of the temporary agencies the Talladega operation used in 2007 was Manpower, Inc. ("Manpower"). AF 8. The individuals Manpower assigned to temporary assignments at MasterBrand are Manpower employees. AF 9. Whatever wages or benefits the Manpower employees receive are paid by Manpower, not MasterBrand. AF 9.

## C.   Fomby's Temporary Assignment at MasterBrand

In January 2007, MasterBrand needed assistance in its Door Business Unit on a temporary basis, so it contacted Manpower. AF 10. Manpower assigned Fomby to work first shift on the Stack Down Team of the Door Business Unit. AF 11. MasterBrand employee Kenny Kelly ("Kelly"), who is African-American, was the hourly lead on Fomby's team. AF 12. MasterBrand employee Rodney Borden ("Borden"), who is African-American, was the supervisor of Fomby's team. AF 13. MasterBrand employees Tim Dark ("Dark") and Sedrick Lawson ("Lawson"), who are African-American, also worked on the first shift in the Stack Down Team of the Door Business Unit. AF 14.

## D.   Altercation on March 27, 2007

On the afternoon of March 26, 2007, Jeff Harper ("Harper"), a Production Manager for the Door Business Unit, learned that the first shift Stack Down Team left

work before completing their work as instructed.  AF 15.  At the beginning of the first shift on the morning of March 27, 2007, Harper informed Kelly about the team's incomplete work.  AF 16.  Harper asked Kelly to address his team about this issue and Kelly went to speak with the other team members.  AF 17.  Shortly thereafter, Harper was in his office and heard people yelling on the production floor.  AF 18.  The loudest voice Harper heard was Fomby's.  AF 19.

Harper left his office, went to the production floor, and instructed the employees that they needed to keep their voices down.  AF 20.  Fomby claims that Harper, while standing about ten feet away from him, pointed at him and called him a "nigger."[4]  Fomby Dep. at 102-03.  At that time, Fomby stepped toward Harper and, in a loud voice, told Harper not to point his finger at him and not to disrespect him.  AF 21.  Fomby shouted that Harper was prejudiced, a "slave owner," and "owned slaves but did not own him."  AF 22.  Harper then instructed Fomby to follow him to a nearby office.  AF 23.  Borden and Kelly were also in the office at that time.  AF 24.

---

[4]  In his Complaint, Fomby asserts that on March 27, 2007, Harper yelled at Fomby, pointed his finger in his face and said to him "Oh, you think you're one of those bad ass niggers," that after he told Harper what he said was wrong, Harper responded by telling him to bring his "black ass" with him and Harper walked him out of the building, and that Harper then told him "I was going to hire your black ass.  But now I see you think you are one of those bad ass niggers."  (Doc. 1 at ¶¶ 9-12).  In his deposition on July 29, 2010, Fomby testified that Harper only used the word "nigger" once and that Harper never used the phrase "black ass" or "bad ass nigger" when speaking to Fomby.  Fomby Dep. at 141-42.

After entering the office, Fomby took off his gloves and moved so close to Harper while yelling at him that Fomby's body pinned Harper against a desk. AF 25. Kelly then intervened, approaching Fomby from behind and convincing him to step away from Harper. AF 26. After Fomby backed away, Harper informed Fomby that he would escort him to the facility's front entrance, and Fomby was to leave the premises. AF 27.

After they walked out of the office, Fomby continued yelling at Harper and again moved close to Harper, to the point where he pinned Harper in a corner near a fire exit door. AF 28. Kelly again stepped in and physically restrained Fomby from making further physical contact with Harper. AF 29. Harper then walked with Fomby to the facility's front entrance, where he informed the security guard on duty that Fomby was barred from returning to the premises. AF 30. The security guard then asked Fomby to leave. AF 31. Assuming Fomby would comply with the security guard's order and leave the plant, Harper returned to his office. AF 32.

Harper was in his office only a short time before another MasterBrand employee entered his office to ask him what was causing the commotion at the plant's front entrance. AF 33. Harper returned to the front of the plant, only to discover that Fomby refused to leave the premises. AF 34. At this point, Fomby once again yelled at Harper and also used his chest to hit Harper's chest while shaking his fist. AF 35.

8

Fomby also demanded that Harper take him to see Coady.  AF 36.  Harper directed the security guard to contact the Talladega police department. AF 37.  Harper refused to bring Fomby back inside the plant, and he handed Fomby a business card bearing Coady's telephone number and instructed Fomby to call the number to make an appointment with Coady. AF 38.  Fomby left the premises while shouting profanities at Harper.  AF 39.  When the police arrived, Harper gave them a statement regarding the incident with Fomby.  AF 40.

**E.      MasterBrand's Investigation of the Altercation**

Thereafter, Harper informed Coady about his altercation with Fomby and told Coady that Kelly and Borden had witnessed the incident.  AF 41.  Coady then contacted the Talladega facility's Human Resources Manager, Mickey Barnett, to inform him of the incident and proceeded to obtain written statements from Harper, Borden, and Kelly regarding their recollection of the events that occurred between Harper and Fomby on March 27, 2007, as well as the identity of any other individuals who they should interview about the altercation.  AF 42.  Harper, Borden, and Kelly provided written statements regarding the altercation between Harper and Fomby. AF 43.  Harper, Borden, and Kelly did not recommend that Coady interview anyone else regarding Harper's altercation with Fomby.  AF 44.

Later that day, Fomby contacted Coady by telephone to discuss the incident

with Harper.  AF 45.  Fomby told Coady that Harper was the aggressor during this altercation, as Harper had been belligerent, had ordered him around, had called him a "nigger" two or three times, and had told him he was lazy and not working hard enough to complete his tasks.  AF 46.  Fomby also recommended that Coady talk with Kelly to corroborate his version of events and the statements made by Harper.  AF 47. Fomby did not tell Coady that he should talk with anyone else who witnessed his altercation with Harper.  AF 48.

When Coady talked with Kelly, Kelly did not corroborate Fomby's account of his altercation with Fomby.  AF 51.  Coady specifically asked Kelly whether he heard Harper use the term "nigger" during his altercation with Fomby, and Kelly stated that he did not.  AF 52.  Kelly understood that, if he witnessed another MasterBrand employee using a racial epithet, he was obligated to report that information in accordance with the Company's policy on equal employment opportunity.  AF 53. Coady also specifically asked Borden whether he heard Harper use the term "nigger" during his altercation with Fomby.  AF 54.  Borden stated that he did not.  AF 54. Coady asked Harper whether he had used the term "nigger" during his altercation with Fomby.  AF 54.  Harper stated that he did not use this term.  AF 55.  Coady reviewed Harper's personnel file and learned that at no time before this incident had Harper been accused of or investigated for engaging in race-based conduct or

behavior.  AF 56.

**F.      MasterBrand Terminates Fomby's Placement**

After investigating the events that occurred between Harper and Fomby on the morning of March 27, 2007, Coady concluded that Fomby was the aggressor during his altercation with Harper, and, in doing so, had violated the principles behind MasterBrand's workplace violence policy.  AF 57.  Accordingly, Coady decided to end Fomby's placement at MasterBrand.  AF 58.  Coady informed Manpower that MasterBrand was ending Fomby's placement at MasterBrand because he was involved in a verbal and physical altercation with a manager, which resulted in a police report being filed and violated MasterBrand's zero tolerance policy with regard to physical violence.  AF 59.  Harper, Kelly, and Borden did not have any involvement in MasterBrand's decision to end Fomby's placement.  AF 61.

**IV.    ANALYSIS**

**A.      *Pro Se* Status**

In response to MasterBrand's Motion for Summary Judgment, Fomby filed a Traverse (Doc. 30).  In this response, Fomby, who is proceeding *pro se*, argues that he should be held to less stringent standards in regards to his filings with the court than those that would be applied to an attorney.  (Doc. 30 at 1).  The Eleventh Circuit has made clear that while *pro se* complaints are entitled to a liberal interpretation, a

11

*pro se* litigant "does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## B.   Race Discrimination

Fomby alleges that MasterBrand discriminated against him on the basis of his race in violation of Title VII and 42 U.S.C. § 1981 when it ended his placement and did not hire him as a permanent employee.[5]  (Doc. 1 at ¶ 16).  Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of his race.[6]  42 U.S.C.

---

[5]  Both of these statutes have the same requirements of proof and use the same analytical framework.  The court, therefore, will explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

[6]  MasterBrand argues that Fomby's claims fail at the outset because he was never a MasterBrand employee.  (Doc. 27 at 14 n.2).  As MasterBrand does not provide any case law indicating what constitutes an "employee" for Title VII purposes, and the court's determination on this issue would not affect the court's ruling on the present motion, the court declines to address this issue.  *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address appellant's "perfunctory and underdeveloped argument"); *Flanigan's Enters., Inc. v. Fulton Cnty., Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument).

§ 2000e-2(a)(1).

A Title VII plaintiff must prove that the defendant acted with discriminatory purpose. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002).  A plaintiff may prove discrimination by relying on either direct or circumstantial evidence. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).  Direct evidence is "evidence which, if believed, would prove the existence of discrimination without inference or presumption." *Id.* (quoting *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989)).  In the absence of direct evidence, a plaintiff must create an inference of discrimination by establishing a *prima facie* case. *Williams*, 303 F.3d at 1293.  To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must demonstrate: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class, or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

"Racially derogatory statements can be direct evidence if the comments were (1) made by the decisionmaker responsible for the alleged discriminatory act *and* (2) made in the context of the challenged decision." *Vickers v. Fed. Express Corp.*, 132 F. Supp. 2d 1371, 1378 (S.D. Fla. 2000) (citing *Wheatley v. Baptist Hosp. of Miami,*

*Inc.*, 16 F. Supp. 2d 1356, 1359-60, *aff'd* 172 F.3d 882 (11th Cir. 1999)).   If a statement fails either prong it is considered a "stray remark" and does not constitute direct evidence of discrimination.   *Id.*

Here, Fomby alleges that on the morning of March 27, 2007, Harper called him "nigger."[7]  Fomby Dep. at 102-03.   Harper was not the decisionmaker in regards to Fomby's continued employment, that decision was made by Coady.   AF 58. Additionally, the alleged statement was made during the altercation between Harper and Fomby, not in the context of Fomby's dismissal.   Fomby Dep. at 102-03.   Thus the statement was a "stray remark."   *See Vickers*, 132 F. Supp. 2d at 1378.   Therefore, this court finds that Fomby has failed to provide direct evidence of discrimination.

The court must next determine whether Fomby has established a *prima facie* case of discrimination.   In determining whether employees are similarly situated for

---

[7]  MasterBrand asserts that this contention does not suffice to create a genuine issue of material fact because it is contradicted by the remaining record evidence. (Doc. 27 at 15).   At the summary judgment stage the court does not weigh evidence; instead, it must resolve all reasonable doubts about the facts and justifiable inferences in favor of the nonmovant.   *See Fitzpatrick*, 2 F.3d at 1115. Fomby testified at his deposition that Harper called him a "nigger" to his face. Fomby Dep. at 102-03.   Thus, contrary to MasterBrand's contention, the allegation that Harper used racial slurs towards Fomby is supported by the record for purposes of the summary judgment motion.   *Cf. Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) (finding plaintiff failed to demonstrate a genuine issue of material fact existed as to whether he suffered an adverse employment action solely by reason of his disability where he relied entirely on unsupported, conclusory statements not based on personal knowledge).

purposes of establishing a *prima facie* case, the court must consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998), *opinion modified on other grounds by* 151 F.3d 1321 (11th Cir. 1998)). The Eleventh Circuit requires that the "quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* At his deposition, when asked whether there is "anyone [he] believe[s] was treated more favorably than [he was]," Fomby answered "Nope." Fomby Dep. at 147. Fomby has provided no evidence as to his replacement, nor has he shown that he was treated less favorably than a non-African-American, much less a non-African-American who violated the Workplace Violence policy. Therefore, the court finds that Fomby has failed to establish a *prima facie* case of discrimination.[8]

_____

[8] MasterBrand argues that Fomby also failed to show that he was qualified for the position as he was not performing his job satisfactorily. (Doc. 27 at 21-22). MasterBrand asserts that Fomby cannot show he was meeting MasterBrand's legitimate performance expectations at the time his placement ended because he had violated MasterBrand's Workplace Violence policy. (Doc. 27 at 22).

Even were Fomby able to establish a *prima facie* case of discrimination, he has failed to show that MasterBrand's legitimate, nondiscriminatory reason for its employment decision was a pretext for discrimination or that discrimination was a motivating factor for the employment action. MasterBrand has demonstrated that it terminated Fomby's placement due to his violation of the Workplace Violence Policy. AF 57-59. The existence of this policy evidences MasterBrand's interest in having a violence-free workplace. Fomby has failed to provide any evidence of pretext, actually testifying at his deposition that he did not believe MasterBrand's decision to end his placement had anything to do with his race. Fomby Dep. at 152-54.

Therefore, the court finds that MasterBrand is entitled to summary judgment on Fomby's claim of racial discrimination in violation of Title VII and § 1981, because he has failed to establish a *prima facie* case of discrimination.

## C.    Hostile Work Environment

---

MasterBrand cites to *Williams v. Motorola, Inc.*, in support of this contention. In *Williams*, the court stated that an employee's ability to handle reasonably necessary stress and work reasonably well with others are essential functions of any position and that the absence of such skills prevents an employee from being "qualified." *Williams*, 303 F.3d at 1290-91. The court found that, based on overwhelming record evidence of the plaintiff's inability to work with others, threats of violence, and insubordination, the plaintiff could not make out a *prima facie* case as she was not qualified for the position. *Id.* at 1291. MasterBrand provides no argument as to what constitutes "reasonably necessary stress." Having already found that Fomby failed to establish a *prima facie* case of discrimination, the court will not address the "qualified" element at this time.

A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dohan Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).   To establish a hostile work environment claim, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability.

*Id.*

MasterBrand argues that Fomby has failed to demonstrate that Harper's conduct was sufficiently severe or pervasive to alter the terms or conditions of his employment.  (Doc. 27 at 26).  This requirement contains both an objective and a subjective component; "to be actionable[] the behavior must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceives . . . to be abusive.'" *Miller*, 277

17

F.3d at 1276 (quoting *Harris*, 510 U.S. at 21-22).   In determining the objective element, a court looks to all the circumstances, including: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

Fomby testified that Harper called him a "nigger" on one occasion in the course of an altercation.  Fomby Dep. at 102-03.  This was the only occasion on which Harper spoke to Fomby.  Fomby Dep. at 106.  Fomby characterized Harper's use of this term as an "offhand comment."  Fomby Dep. at 152.  Fomby testified that this incident with Harper is the only basis of his claim against MasterBrand and that he never found anything other than this incident offensive at MasterBrand.  Fomby Dep. at 148, 169-70.  The court finds that Harper's alleged statement, while offensive, was not sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  *See McCann v. Tillman*, 526 F.3d 1370, (11th Cir. 2008) (finding that supervisor's referral to plaintiff as "girl" and referral to two male black employees as "boys" and other supervisor's reference outside of her presence to a former black employee as a "nigger bitch" and comment that he had "never received the 'nigger vote' and that he didn't want it alone extending over a period more than two years was too sporadic

18

and isolated to establish that employer's conduct was so objectively severe or pervasive as to alter the terms and conditions of her employment); *Barrow v. Ga. Pac. Corp.*, 144 Fed. Appx. 54, 58 (11th Cir. 2005) (finding that employee's allegations of viewing the letters "KKK" and confederate flag decals and being subjected to isolated, sporadic racial slurs do not meet the standard of severe and pervasive harassment).

Therefore, the court finds that MasterBrand is entitled to summary judgment on Fomby's claim of hostile work environment in violation of Title VII and § 1981, because he has failed to establish that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

**D.    Retaliation**

Pursuant to Title VII, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) a materially adverse action; and (3) a causal relation between the two events.  *Butler v. Ala. DOT*, 536 F.3d 1209, 1212-13 (11th Cir. 2008).

In his Complaint, Fomby claims that he objected to Harper's use of a racial slur

19

and that in response to his complaints, MasterBrand terminated his placement and refused to hire him as a permanent employee.  (Doc. 1 at ¶¶ 22-23).  MasterBrand argues that Fomby cannot establish a *prima facie* case of retaliation because he has failed to demonstrate that he engaged in any protected activity before his placement at MasterBrand ended.  (Doc. 27 at 29).

MasterBrand argues that while internal complaints can rise to the level of protected activity, mere statements of objection to a member of management do not rise to that level.  (Doc. 27 at 29).  The cases that MasterBrand cites in support of its contention do not stand for this proposition; they do not address what form the complaint must take, merely, that an internal complaint can constitute protected activity.  *See Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174-75 (11th Cir. 2000). Here, Fomby objected to Harper's use of the word "nigger" both to Harper and Coady.  Fomby Dep. at 99, 144; Coady Dep. at 28-29.

MasterBrand also argues that Fomby cannot show a causal connection between the alleged protected activity and Coady's decision to terminate his placement as he has not shown that Coady was aware of the claimed protected conduct.  (Doc. 27 at 29-30).  In his deposition, Coady testified that Fomby called him after the incident and told him that  Harper had called him a "nigger."  Coady Dep. at 28-29.  This call

took place prior to Coady's decision to terminate Fomby. *See* AF 45, 57-58. Thus, Fomby's complaint of Harper's use of the term "nigger" to Coady, the General Manager of the Talladega operation, was known to Coady at the time that he decided to terminate Fomby's placement.

As discussed above, MasterBrand has offered a legitimate, nondiscriminatory reason for its termination of Fomby's placement, namely his violation of the Workplace Violence Policy. AF 57-59. Fomby has failed to provide any evidence of pretext, actually testifying at his deposition that he did not believe MasterBrand's decision to end his placement had anything to do with his race. Fomby Dep. at 152-54.

Therefore, the court finds that MasterBrand is entitled to summary judgment on Fomby's claim of retaliation in violation of Title VII and § 1981, because he has failed to establish that MasterBrand's reason for terminating his placement was merely a pretext for discrimination or present sufficient evidence that discrimination was a motivating factor for the termination.

## V.   CONCLUSION

Accordingly, for the reasons stated above, MasterBrand's Motion for Summary Judgment is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this the 16th day of December, 2010.


**VIRGINIA EMERSON HOPKINS**
United States District Judge